Mr. Merritt, we'll hear from you when you're ready. May it please the Court, I'm Robert Merritt with the law firm of Bailey & Dixon in Raleigh, North Carolina. With me is Jeff McKinney, who's with our law firm as well. I'm going to talk about this case. This case involves the interplay of the Origination Clause and the treaty-making power of the United States Constitution. If a treaty provision violates the House of Representatives' exclusive power to enact revenue-raising legislation, then if the treaty provision is illegal, violates the Constitution, it is unenforceable. And in this case, the federal government, we believe, improperly enacted a revenue-raising law. How is that raising revenue? Wasn't it just a collection of the tax that had been determined to be final in Canada? Your Honor, when you read 26A, we believe that the sole purpose was to raise from the United States' standpoint. Where did the money go, though, when it was collected? Where does the money go when it's collected? The money, it depends upon which side of the equation you're looking at. Your client is only on one side of the equation, so where did your client's money go? Our client's money supposedly goes to Canada. So how is that raising revenue for the United States? It raises revenue for the United States because the 26A can't be separated apart. There's two parts that are interdependent. Well, if you flip the other side, you've got the same issue. If it's the United States' judgment and the man is in Canada, we send it up there and they collect it for the United States. That's true, and that's one side of the equation. However, if you read it as a whole... The tax under that circumstance is assessed and imposed under the tax law, which did originate in the House. But in this case, the tax that was unpaid originated in Canada under the tax laws of Canada, and a final judgment, so to speak, was entered in Canada, was accepted by the United States, and the United States, under the treaty, collected the tax and sent it to Canada. Now, that's a collection effort. That's a collection effort on one side of it, but on the other side... That's the other side's collection. The other side is collection, but it uses our assessment statute to do so, and the sole purpose, if you read the technical explanation... Well, let me ask you something. The fact that they use the assessment mechanism to collect the tax, they had to have some method. They could have put it under some foreign judgments act, or they could have put it under anything, but they chose to use, very conveniently, the IRS collection method. But that isn't raising revenue for the United States, it's collecting a judgment for Canada. Well, the revenue raising aspect of this is that we are collecting, through that interdependent statute, revenue that we would never receive because it's in Canada, and we couldn't otherwise get it. Except that revenue is assessed under our tax laws, and you're not challenging our tax laws. We're not challenging our tax laws? This particular one was imposed under the law of Canada, under Canada's tax laws. And if you want to address Canada's tax laws and say it didn't appropriately go in their house or whatever it is, you'd have to go up to Canada to do that. All we get is basically a certified judgment, and we have the right to refuse it, and if we accept, we collect the tax. Well, Your Honor, Not as revenue, though, as a collection agent for Canada. It's a mutuality type thing. We're a collection agent, but the thing that distinguishes this is that it uses our assessment statute 6201 to accomplish that. And in that sense, if you step back and look at the assessment statute and the Internal Revenue Code and what that is supposed to accomplish, the assessment statute itself is a revenue-raising provision. Except the assessment statute was enacted in compliance with what you said. It started in the House. It's part of the IRS. But that assessment is not to collect a U.S. tax. It's not a bill to collect revenue. It is a mechanism that the treaty incorporates to collect the Canadian tax. Well, Your Honor, that may be true, but the problem here is that our assessment statute, which was, as you mentioned, passed by, originated in the House of Representatives, as it properly should, sets certain rules. And that statute says that it is to be utilized to, the Secretary has the power to assess the tax under this title. The title is Title 26 of the U.S. Code, which is the Internal Revenue Code. So when you look at that, yes, you have that originating properly in the House of Representatives. On the other hand, you have this provision of this treaty, which all of a sudden says this is going to be an assessment under the United States House passed bill, which says that there's no authority for that. And the same thing applies to the 6301 provision, because 6301, which is the collection provision, applies to the Internal Revenue Laws. And technically, this is, the Internal Revenue Laws are contained in Title 26, which is Internal Revenue Code. So in effect, what we have here is a treaty provision, which is affecting a House passed bill that only gives authority to the Secretary to collect, to assess taxes of the Internal Revenue Code. And this is not an Internal Revenue Code tax. This is where it gets very complicated. And a tax practitioner has to say, well, wait a minute, what's really happening here? That's probably the right question, is what's really happening. And it seems to me what's really happening is the United States government is not collecting a revenue for the United States. It is assisting Canada pursuant to an agreement with Canada to collect and to help Canada collect its taxes, which were assessed under Canadian law. This is correct, but at the same time, it's interdependent because there's no reason to have one side of the equation, which is the power assistance of Canada in collecting their taxes, without having their part, which is Canada is collecting, raising our revenue, which we would not otherwise get. And that is how we come to... Except our revenue, our taxes are assessed, the taxes that Canada collects are assessed under our revenue. This is a... You're aware of the Uniform Enforcement of Judgments Act, aren't you? I'm aware of that. Most of the states have. All the states in the Fourth Circuit have it. And in that case, a judgment entered in one state is sent to the clerk of a court of another state, and you don't have to sue on it. The clerk of the court of the second state files it and allows it to be enforced as if it were entered in that state. That's all this is. Your Honor, if this provision was handled like that... It is handled like that. Well, I would... Tell me how it wasn't handled like that. They entered a final decision in Canada, did they not? They have a final decision in Canada. And that decision was sent down to the United States, and the United States had to accept it, right? They have to accept it under 26 A.S. final. And if they accept it under the treaty, then we send that judgment to the IRS Commissioner of Internal Revenue to collect it under the treaty. Isn't that what happens? That's what happens for one half of the equation, Your Honor. And the other half of the equation is we have our revenues, which we can't collect, and we have this interdependent agreement that's done by treaty, which does not involve the House of Representatives. And they are going to collect our revenues, which we could not otherwise collect. So in that sense, it's a revenue-raising statute, which implicates in our mind the origination clause. You know, on the flip side, first of all, it's not relevant because your man is from Canada here, but quite a part, you see, is interdependent on the flip side. But on the flip side, the tax is collected under the United States tax code, and it is revenue to the United States, and Canada just helps us collect that. But that tax is imposed under the tax code and is a revenue for the United States, and you're not arguing that the tax code is unconstitutional? No, we're not arguing the tax code, but we're saying that we're arguing that 26A is unconstitutional because it affects the raising of that revenue. All right. And that's where we come from. And we come from that position for a number of reasons, the first of which we mentioned. And that is when you look at the, what is the bill for raising revenue? And we will get past that, obviously. The technical explanation says that the reason, and when you read the technical explanation of the Treasury Department in this case, they say that the reason they are entering into this statute is because the Internal Revenue Service has claims against persons in Canada that would be subject to collection under these provisions, not subject otherwise. If you read the whole technical explanation, that is the only reason that they state that this provision is being put in. It's being put in as independently, you can read it separately, and we believe that's the sole purpose. When you read through, it's the sole purpose for that statute. Now, in getting into whether that is a bill for raising revenue, we say that they've admitted that it's a bill for raising revenue in that sense. Number two, when you read the Supreme Court cases that we think are relevant, there is a rule about what we believe as to what is a revenue-raising statute that implicates the origination. Is there any Supreme Court case that has held a violation of the case? There's a series of cases which we call the incidental field. It relates all the way back to Justice Story's comments. It's the Nebaker case, it's the Miller v. Roberts case, it's the Munoz case, and here's what we believe those say. They say those cases don't apply here because we don't have the kind of program that they dealt with in those cases, which was a national program of to defray the cost of that program. Instead, we have here what we believe is the Supreme Court's interpretation, and that is that where you have the purpose of the legislation is the raising of revenue, which we believe that is the purpose of our side of 26A, then if that's the purpose, and we say it's the sole purpose, and the proceeds are used to pay the expenses and obligations of government in general, as opposed to the program expenses that are related to the specific program, then it implicates the origination clause, and that's what we believe the law to be. We believe that to be the law because if you look at that series of cases, and they all use Justice Story's comments, his commentary about what he was talking about, whether a law is raising revenue, raises taxes in the strictest sense of the word. If you read that entire commentary, what he's talking about is what they result in the Nebuchadnezzar and in the Roberts case. What he's saying is that if you have a special program, then if you have a tax that's incidental to that, that's attached to that to defray those costs, it does not. It's not revenue raising. It's not revenue raising, and we agree 100% with that, but if you read the rest of that case, I mean the commentary and the cases, they also say that if its purpose is to raise revenue, and you take the money and use it to defray, not to defray, but to pay the cost of government generally, which is exactly what happens here. The money that the United States gets back. Counsel, if that's your theory that anything where the purpose is to raise revenue is covered by the origination clause, does it follow that all of the information sharing provisions and treaties like this one are also invalid because they didn't originate in the House? No, Your Honor. Well, why not? The purpose of those is also to raise revenue. Well, the reason is this. Those cases and the lightest cases, probably the one that we're talking about. That, the result in lightest basically was... Okay, just can't you just say one way or the other, why aren't those unconstitutional? Because the purpose is to raise revenue. With more information, we avoid tax evasion and we collect more money. Well, because in our case, we have an exclusive provision, and if the origination clause is provision in a treaty, because if the purpose is to raise revenue... Because we don't believe that. This is what the court said. They said, since nothing in the Constitution grants Congress the exclusive power to authorize the exchange of lawfully collected financial... That's what the... Okay, you're not answering my question. My question is, the purpose of information sharing provisions is to raise revenue. If everything is subject to the origination clause, if its purpose is to raise revenue, I just think it follows from your argument, whatever the Ninth Circuit said, that those provisions also are unconstitutional. But if I'm wrong, please tell me why. Well, I have to say that we're talking about an assessment of taxes. We're talking about taking taxes from somebody. We're not talking about exchanging information and that's... But that's not the test you're asking us to adopt. You want us to adopt a purpose test. And my concern is that that would be very broad. That when we authorize additional agents for the IRS, the purpose is to collect more revenue. That if we give the IRS a new building, the purpose is to collect more revenue. So I am wondering where the limiting principle is for your purpose-based test. Well, in the lightest case, we're talking about a summons and giving information. The purpose of which is to raise revenue. Purpose of which in that case was to assist France in raising news. But they're using their own tax system to collect that. We're using our tax system to collect someone else's foreign country's taxes. Is that about cover it? Your Honor, that about covers it. Thank you, Mr. Merritt. Mr. Sheehan. May it please the Court, I'm Anthony Sheehan. I represent the United States. As the Court has already commented, this provision, Article 26A, its purpose as applied here is to collect revenue for Canada, not for the United States. And when Canada collects on our behalf, it is pursuant to an assessment made under our revenue laws. As Judge Harris just asked, the summons cases are very much on point. The purpose of information exchange is to lead to the collection of more revenue. The Ninth Circuit in lightest, the Second Circuit in A.L. Burbank, it hold those to be, correctly held those to be constitutional. The purpose, treaties and statutes are to be construed harmoniously. You can do that with our assessment and collection provisions, because the treaty just says we will use these mechanisms to do the collection, just like the information exchange treaties use the summons mechanisms to facilitate information exchange. So we think that the District Court got this case right, that the Article 26A is constitutional. And if there are no questions from the Court, I'm prepared to rest on my brief. I have a question. Just a quick question. And I know it's not raised by this case, but what about the double taxation provisions in these treaties? Yes, there's interesting academic debate about those. What, is it your position that they're not revenue raising provisions? It is our position that they would, that this is simply a matter of coordinating two countries for the benefit of taxpayers. And we would defend them as constitutional if they were to come up. And I understand they're not raised, but so your position is they don't fall under the origination clause because they are not bills for raising revenue? Yes, if it came up, that would be our position, Your Honor. Okay. I was just curious. All right. Thank you, Mr. Shahan. Thank you. Mr. Merritt. May it please the Court, Your Honor. I know that this case is a troubling case, at least from my standpoint, because I have a difficult time with the concept that we're using. Well, I understand your position and if I understand it and can recast it, your position is that by having mutual collection with Canada, we actually increase our revenue because we're getting more revenue from Canada that we otherwise would not have gotten without this mutual treaty. And therefore, the treaty itself is a revenue raising statute. But the mechanism that the treaty uses is basically a collection mechanism, which is attached to the tax laws of the respective states, Canada, and in this case, the United States. So the actual revenue raising is done through the tax laws of the respective countries and the mutual collection just enhances those tax laws. And your argument is that in enhancing collection of taxes, that is a bill raising revenue. Is that roughly what your position is? That's roughly the argument, but what we're saying basically is this. If you get past the basic proclamation or statements that if it's a revenue raising statute and the money goes to the Treasury, then it is a revenue raising bill. It implicates that's basically our premises, what's going on here. But they just follow up on if I was characterizing what I thought here was enhancing the revenue raising under the IRS because we now have Canada as an additional agent that's helping us raise the revenue. But if you really look at that a little closer, the bringing in Canada into the help for doing that isn't a bill raising revenue, it's a bill collecting the tax. The tax is imposed under the tax law. In other words, the revenue that the bill that says a person has to pay the tax is under our tax code. And if he flees, we don't get that tax. So we have a collection problem. So if we enter into these mutual agreements with countries, we can collect those taxes that are imposed under our tax code. And so that segregation from the imposition of a tax under a bill and the collection seems to me might justify upholding the treaty. You're suggesting because it's so connected to the tax laws that we have to go through the same process when we enact a tax law. You know, I will sum it up where we come from is that to get the revenue that we're talking about and to do this, we have to take a step and that is to deem the Canadian tax to be an assessment of tax under our system. And that's 6201. 6301 is the collection statute. And we would submit that those two statutes are two of the most important revenue-raising statutes in the Internal Revenue Code because those create that. And that's what we're saying. I think I understand that. I think we understand that. Thank you, Mr. Merritt. We'll come down to Greek Council and then proceed on to the next case.
judges: Paul V. Niemeyer, Pamela A. Harris, Ellen L. Hollander